**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON  DIVISION**

|                                   |   |                        |
|-----------------------------------|:-:|------------------------|
|                                   | : |                        |
|                                   | : |                        |
| **DEBRA LITTLE,**                 | : |                        |
|                                   | : |                        |
| **Plaintiff,**                    | : | **Civil Action No.**   |
|                                   | : | **5:07-CV-101 (CAR)**  |
| **v.**                            | : |                        |
|                                   | : |                        |
| **PEACH COUNTY SCHOOL DISTRICT,** | : |                        |
| **et al.,**                       | : |                        |
|                                   | : |                        |
| **Defendants.**                   | : |                        |

_____

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Currently before the Court is Defendants' Motion for Summary Judgment [Doc. 26].  Through the present motion, Defendants assert they are entitled to judgment as a matter of law because Plaintiff's claims of sexual harassment are time barred, and Plaintiff's claims of retaliation are not supported by sufficient evidence to raise a genuine issue for a jury to decide.  Upon consideration of the briefs and evidence submitted and for the reasons discussed below, the Court agrees, in part.  Defendants' Motion for Summary Judgment is accordingly **GRANTED in part** and **DENIED in part**.

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir.1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323.

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## FINDINGS OF FACT

This case arises out of Plaintiff Debra Little's employment with Defendant Peach County School District (herein "the PCSD"). Plaintiff, a mentally-disabled female, was referred to the PCSD by Abilities Discovered, an agency that helps disabled people find productive employment. The school superintendent at that time, Derrell Bryan, made the decision to hire Plaintiff, and she was employed as a full-time custodian for the PCSD from February 1, 2002 until January 2006. Prior to that time, she served as a part-time custodian for the PCSD in the Peach County High School. When Plaintiff was promoted to a full-time position, she was assigned to the PCSD's Central Administration Building. Plaintiff worked in that location without incident for nearly four years, and her job performance was consistently rated as either good or very good by her supervisor, C.B. Mathis (herein "Defendant Mathis"). Defendant Mathis served as Plaintiff's supervisor for most of her tenure at the PCSD.

In late 2004, Superintendent Bryan was replaced by Tommy Daniel. It was at that time Plaintiff claims that her employment with the PCSD "changed dramatically." In fact, during the months of February and March of 2005, after Bryan was gone, Plaintiff's supervisor, Defendant Mathis, allegedly began engaging in sexually harassing behavior. According to Plaintiff, Mathis made comments to her about his genitalia; made lewd gestures with reference to his genitalia; made suggestions to Plaintiff of sexual activity; on at least two occasions, physically cornered Plaintiff in places from which she could not escape and pressed his body close to hers; and, on at least one other occasion, grabbed Plaintiff's arm from behind, near her breast, and jiggled it lewdly and inappropriately. This behavior, for whatever reason, apparently ceased in March of 2005. Plaintiff further claims that Mathis repeatedly reminded her that her employment was entirely dependent on his continued good will and threatened to demote her and reduce her hours and pay if she reported the harassment; however, it is unclear from the Record identified, whether these statements were made during the months of February

and March of 2005 when the alleged harassment occurred or sometime thereafter. Plaintiff only alleges that when the harassment was occurring during these key months, she "was very afraid of Mathis" and that she "started trying to avoid him after he started harassing me."

Nonetheless, in August of 2005, Plaintiff chose to make her complaints known during a meeting attended by Mathis, Doris Wilkinson, Deputy Superintendent of the PCSD, Jessie McKensie, Head Custodian at Peach County High School, and Billy McFadden, Plaintiff's case manager from Abilities Discovered. The purpose of the meeting was to advise Plaintiff that she was going to be transferred to work in the Peach County High School. School Superintendent Daniel testified that Plaintiff was being transferred because she needed closer supervision than that provided at the Central Administration Building and that this could be provided at a more regimented location like the Peach County High School. However, believing that Defendant Mathis had betrayed her even though she had remained silent about his harassment, Plaintiff advised all of those in the meeting that she believed that she was being transferred to a less-desirable work location because of her rejection of Mathis' previous sexual advances. Plaintiff further threatened to complain to the School Board about the harassment. Plaintiff did subsequently file such a complaint.

Approximately two weeks later, Plaintiff was transferred to the Peach County High School, as discussed in the meeting. At that time, Plaintiff was told that her harassment charges against Mathis had been dismissed by the School Board. Mathis had been exonerated of any wrongdoing. The Director of Human Resources for the PCSD is alleged to have told Plaintiff to remain silent about Mathis' prior conduct, stating that "Mr. Mathis has a reputation to maintain." Plaintiff's Abilities Discovered case manager likewise advised her to remain silent so that she could keep her job.

Although the transfer was only a change in location, and Plaintiff maintained the same salary and benefits, she viewed the transfer as punishment because the location was "less-desirable" than

working in the PCSD Central Administration Building.  Plaintiff also disliked being more closely

scrutinized in the more regimented working environment.  Plaintiff testified that she, in fact, believed

that her new supervisor, Jesse McKenzie, overly scrutinized her work and even attempted to sabotage

her work by providing her with inadequate supplies.  Plaintiff believes that McKenzie was "ordered

to find a way to fire [her]."

It is undisputed that many issues about the quality of Plaintiff's work arose at the Peach County

High School location. Plaintiff was written up at least twice for alleged poor job performance and

accused of being insubordinate.  At one point, Plaintiff was called into the School Principal's office to

discuss her alleged deficient performance.  Plaintiff apparently became upset during the meeting, was

disruptive, hyperventilated and collapsed in a chair.  Plaintiff was briefly hospitalized after the collapse.

When she returned to work, Plaintiff allegedly encountered Superintendent Daniel and her former

supervisor, Defendant Mathis, in one of the school's hallways.  At that time, Daniel, not Mathis,

allegedly stated to Plaintiff, "[y]ou can clean my crotch."  Both Daniel and Mathis allegedly laughed

after this comment was made.

In January of 2006, Plaintiff's employment with the PCSD was terminated. Plaintiff's

termination was recommended by the Peach County High School principal, Claudia Peterson, and

confirmed by Superintendent Daniel.  The reason cited for her dismissal was "unsatisfactory job

performance."

Just a few weeks prior to her termination from the PCSD, the EEOC received Plaintiff's first

charge of discrimination.  Plaintiff, acting pro se, initially filed her complaint against Abilities

Discovered, not the PCSD, with the Georgia Department of Labor on December 29, 2006.  The charge

was thereafter forwarded to the EEOC on January 12, 2006.  She received her right to sue letter on

August 18, 2006.  Plaintiff did not file an appropriate charge of discrimination against the PCSD until

July 11, 2006, and Plaintiff received her right to sue letter, as to that charge, on December 20, 2006.

In November of 2006, Plaintiff filed suit in federal court alleging violations of Title VII against the Executive Director of Abilities Discovered.  That case was dismissed because Plaintiff failed to state a claim upon which relief could be granted under Title VII.  Plaintiff, represented by counsel, subsequently filed the present case in March of 2007, which is now before this Court on motion for summary judgment.

## DISCUSSION

Through this action, Plaintiff alleges that she was unlawfully subjected to a sexually hostile work environment while employed by the PCSD and subsequently retaliated against, via transfer and termination, after she complained of this behavior.  Plaintiff's Complaint, in fact, includes seven counts. Counts I and II allege sex discrimination, hostile work environment and quid pro quo, under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, et. seq.  Counts III and IV likewise raise claims of retaliation in violation of Title VII.  In the remaining counts, Plaintiff states claims of unlawful discrimination, sexual harassment and retaliation, arising out of the same facts, pursuant to 42 U.S.C. § 1983.  Ultimately, Plaintiff has two types of claims, those arising out of alleged sexual harassment and those arising from alleged retaliatory treatment after she complained of such harassment.   On summary judgment, Defendants blanketly contend that both categories of Plaintiff's claims must fail as a matter of law because (1) Plaintiff's claims based on the sexual harassment by her one-time supervisor, Defendant Mathis, are time barred, and (2) Plaintiff's claims of retaliation are not supported by sufficient evidence to raise a genuine issue of material fact.  For the reasons discussed below, this Court agrees in part.

A.  <u>Sexual Harassment Claims.</u>

  In Counts I, II, V, and VII of her Complaint, Plaintiff alleges that she was subjected to a hostile work environment through the unwanted and unlawful sexual advances and harassment of her direct supervisor in violation of both Title VII and Section 1983.  With respect to Plaintiff's claims of sexual harassment, under both Title VII and Section 1983, Defendants contend that they are entitled to summary judgment as those claims are time barred by Title VII's limitation period.  It is, in fact, well-settled that before suing under Title VII a plaintiff must first exhaust certain administrative procedures. <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir. 2001) (citing <u>Crawford v. Babbitt</u>, 186 F.3d 1322, 1326 (11th Cir. 1999)).  Exhaustion requires that a plaintiff file a charge of discrimination with the EEOC. <u>Id.</u> (citing 42 U.S.C. § 2000e-5(b) (1994); <u>Alexander v. Fulton County</u>, 207 F.3d 1303, 1332 (11th Cir. 2000)).  In Georgia, a plaintiff must generally do so within 180[1] days "after the alleged unlawful employment practice occurred." <u>See</u> 42 U.S.C.A. § 2000e-5(e)(1);  <u>Watson v. Blue Circle, Inc.</u>, 324 F.3d 1252, 1258 (11th Cir. 2003).  If a plaintiff fails to file before this time elapses, his claim is untimely. <u>Alexander</u>, 207 F.3d at 1332.

  Here, Defendants show and it is undisputed that the alleged sexual harassment by Defendant Mathis took place during February and March of 2005.  Plaintiff did not file an EEOC charge related to any of this alleged conduct until January 12, 2006, a charge which was forwarded to the EEOC by the Georgia Department of Labor having been filed there on December 29, 2005.  This charge was not filed against the PCSD; it was instead filed against Abilities Discovered.  Plaintiff did not file an

---

[1] Under federal law, the plaintiff generally exhaust his or her administrative remedies within either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e-5(e)(1) (West 2000).  The 300-day time period is utilized in those states that have entities with the authority to grant or seek relief with respect to unlawful employment practices and an employee files a grievance with that agency; in all other states, known as "non-deferral states," the charge must be filed within 180 days. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002). Because Georgia is a non-deferral state, the 180-day time period applies. <u>Watson v. Blue Circle, Inc.</u>, 324 F.3d 1252, 1258 (11th Cir. 2003); <u>see also</u> <u>Bennett v. Chatham County Sheriff Dept.</u>, Slip Copy, 2008 WL 4787139 *7 (11th Cir Nov. 4, 2008).

appropriate charge of discrimination against the PCSD with the EEOC until July 11, 2006.  However, regardless of whether the December 29, 2005, January 12, 2006 or July 11, 2006 date is the critical date in this case, Plaintiff's charges of sexual harassment were clearly filed well-beyond the 180-day limit imposed by Title VII.

On summary judgment, Plaintiff asserts that the limitations period should be tolled in her case under a "continuing violation" theory "because she feared retaliation if she came forward with her allegations."  In support, Plaintiff cites to a case from the United States Court of Appeals for the Eighth Circuit, Van Steenburgh v. Rival Co., 171 F.3d 1155 (8th Cir. 1999).  The Eighth Circuit law, however, is not so different from the law in this Circuit.  In Van Steenburgh, the Eighth Circuit held that the relevant limitations period was tolled because the plaintiff's claim of hostile environment was a continuing violation. Id. at 1159.  The court found that the plaintiff in that case was subjected to a pattern of harassment which involved waiting several months between incidents of direct physical contact.  During the periods when no touching occurred, the aggressor stared at the plaintiff and kept her in constant fear of retaliation. As such, the court recognized that, though not alone sufficient to satisfy the definition of sexual harassment, incidents within the limitations period gave rise to an actionable claim because the "jury [was] capable of perceiving the incident as 'discriminatory' in light of all the prior incidents of sexual harassment."  Id.  In other words, because the plaintiff in that case was subjected to a continuing pattern of discrimination, and the aggressor engaged in conduct within the limitations period which would support a finding of discrimination in light of the previous incident of harassment, the relevant limitations period was deemed to be met.  Id.

For many reasons, the present case is distinguishable from Van Steenburgh.  There is nothing in the record to suggest that Plaintiff was subjected to "an ongoing pattern of harassment which involved waiting several months between incidents of direct physical contact" or that Mathis continued

to engage in conduct after March of 2005, which, while not alone sufficient to satisfy the definition of sexual harassment, forced Plaintiff to continue living in an ongoing nightmare of harassment.

Moreover, as even Plaintiff concedes, there is no case law in this Circuit supporting the application of the continuing violation theory simply because the employee feared retaliation within the limitation period. The law appears to be just the opposite; the Eleventh Circuit Court of Appeals has stated that a "purported fear of retaliation . . . is not a ground for equitable tolling." Carter v. West Publ'g Co., 225 F.3d 1258, 1264 (11th Cir. 2000). Generally, courts within the Eleventh Circuit, when examining a claim of continuing violation, conduct a complete factual analysis and determine whether there is a "substantial nexus" between the alleged discriminatory conduct occurring outside the limitations period and that occurring within the limitations period so as to support a finding that the conduct was "continuing." Roberts v. Gadsden Mem. Hosp., 835 F.2d 793, 800 (11th Cir.1988). In making this determination, three, non-exhaustive factors may be applied: (1) the subject matter, whether the acts involve similar types of discrimination; (2) the frequency, whether the acts are re-occurring or isolated incidents; and (3) the degree of permanence, whether the act was of the type likely to trigger the employee's awareness of and duty to assert her rights. Clark v. City of Macon, 860 F.Supp. 1545, 1550 (M.D. Ga.1994); Geer v. Marco Warehousing, Inc., 179 F. Supp.2d 1332, 1338 (M.D. Ala. 2001).

Upon consideration of these factors, this Court finds that the harassment by Defendant Mathis should not be considered "continuing." Among the acts of discrimination that Plaintiff alleges to have taken place within the 180-day period, if this court uses the earliest dates, those are her September 2005 transfer and January 2006 termination. The acts would also necessarily include Plaintiff's complaints about overly strict scrutiny of her performance and provision of inadequate work supplies after her transfer *as well as* any alleged statements feeding her "fear of retaliation." None of the conduct occurring within the limitations period, however, is similar to the type of sexual harassment Plaintiff

allegedly suffered while working under Mathis' supervision.  In fact, there is no evidence in the record, other than Plaintiff's conclusory allegation, suggesting that her transfer was based on Mathis' allegedly harassing behavior or her lack of a positive response to it.  The same is true of the hightened scrutiny that Plaintiff suffered after her transfer and her ultimate termination.  Inasmuch, Mathis, the alleged perpetrator, was not Plaintiff's supervisor after her transfer, and there is no evidence that he had any involvement in her discharge.  There are likewise no allegations of further sexual harassment by Mathis after her transfer, and Plaintiff herself only alleges that the disparate treatment and discharge were retaliatory; she does not alleged that they were related to her rejection of Mathis' alleged prior sexual advances.  Thus, this alleged discriminatory conduct is not similar to the discrimination which allegedly occurred outside the limitations period, namely sexual harassment.

Any reliance on Superintendent Daniel's statement to Plaintiff, "You can clean my crotch," to anchor Plaintiff's claim of continuing violation, must also fail.[2]  It is not a sufficient anchor by which to pull-in the earlier conduct by Mathis.  While Mathis was present when the statement was made, he was not the aggressor.  Plaintiff clearly alleges in her affidavit that Daniel, not Mathis, made the statement.  The requisite nexus, therefore, does not exist.  See Roberts, 835 F.2d at 801 (finding that discrimination by different actors was not sufficiently similar to constitute a single continuing violation); Geer, 179 F.Supp.2d at 1338 (same).  The same reasoning applies to Plaintiff's claims that other PCSD agents and even her own case manager warned her not to further pursue harassment claims against Mathis after her transfer.  Mathis did not make those statements, and they cannot be attributed to him.  Furthermore, these statements do not constitute sexual harassment.  Like the conduct discussed

---

[2] The Court notes that Plaintiff apparently cites this fact for the first time in her response brief and tends to agree with Defendants that Plaintiff is foreclosed, based upon prior admissions, from basing a harassment claim upon this statement.  At all times previous, Plaintiff has represented that any alleged harassment was limited to conduct occurring in February and March of 2005.  Plaintiff appears to concede this fact.

above, these statements are more supportive of a retaliation claim than sexual harassment. Plaintiff does allege that, at one point, Mathis threatened her with demotion or discharge if she complained of the harassment. However, there is nothing cited by Plaintiff to show that any of those statements were made by Mathis *after* March of 2005 or otherwise within the limitations period. Rather, all evidence suggests that the challenged behavior ceased in March of 2005. As such, these alleged statements cannot be considered to support a finding of a "continuing violation."

The frequency of the conduct is also not persuasive factor in the present case. The alleged harassment by Mathis cannot necessarily be considered "re-occurring." As noted repeatedly above, the time period of the alleged sexual harassment in this case is defined. Plaintiff only asserts that she was harassed by Mathis in the Spring of 2005 and that this harassment ceased in March. There are no allegations that Mathis later engaged in harassment, except to the extent that he may have laughed at a statement made by Daniel. This alone, however, is not sufficient to find that Mathis' previous harassment was continuing; the conduct was not sufficiently similar. See Roberts, 835 F.2d at 801.

Most significant is the fact that the alleged sexual harassment in this case was severe and thus had the degree of permanence, which should have triggered Plaintiff's awareness of and duty to assert her rights. Plaintiff, in fact, concedes this point. It will, nevertheless, be addressed here because the Eleventh Circuit has emphasized that this is perhaps the most important of the factors to be considered. See Roberts, 835 F.2d at 801. Clearly, the purpose of the continuing violation doctrine is "to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." Id. (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208 (11th Cir.2001)). The doctrine is based on "the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." Hipp, 252 F.3d at 1222. The Eleventh Circuit has thus "limited the application of the continuing

violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. For Biological Diversity v. Hamilton, 453 F.3d 1331, 1336 (11th Cir.2006). "[I]f an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine...." Hipp, 252 F.3d at 1222.

In this case, application of the continuing violation doctrine would not serve its stated purpose. Plaintiff asserts that Mathis made comments to her about his genitalia; made lewd gestures with reference to his genitalia; made suggestions to Plaintiff of sexual activity; on at least two occasions, physically cornered Plaintiff in places from which she could not escape and pressed his body close to hers; and, on at least one other occasion, jiggled her breast area lewdly and inappropriately. The alleged conduct was, as stated above, severe, and therefore the type that would have alerted the average lay person to act to ensure that her rights were protected. Again, Plaintiff concedes as much; the discriminatory nature of Mathis' alleged conduct was apparent when it occurred. Plaintiff, therefore, should not now be permitted to rely upon the continuing violation doctrine. See id.

Simply stated, "[t]he continuing violation doctrine does not exist to provide a second chance to an employee who allowed a legitimate claim to lapse." Roberts, 835 F.2d at 800. This, however, is what Plaintiff seeks to do. Accordingly, the Court finds that the continuing violation doctrine is inapplicable to the case at bar, and Plaintiff's Title VII claims based upon allegations of sexual harassment by Defendant Mathis in February and March of 2005, contained in Counts I and II of the Complaint, are time barred. Summary judgment is **GRANTED** as to those claims.

On the other hand, the administrative exhaustion requirements of Title VII do *not* apply to discrimination claims brought pursuant to 42 U.S.C. § 1983. See Templeton v. Bessemer Water Service, 154 Fed. Appx. 759, 762 n.1 (11th Cir. 2005); Hines v. D'Artois, 531 F.2d 726, 736 (5th

Cir.1976); <u>Blackledge v. Alabama Dept. of Mental Health & Mental Retardation</u>, 2007 WL 3124452

* 9 (M.D. Ala. Oct. 25, 2007).  As such, Plaintiff's parallel sexual harassment claims brought under

Section 1983, i.e., those included in Counts V and VII of the Complaint, are not time barred for failure

to file a timely charge of discrimination with the EEOC.   In their Reply brief, Defendants nevertheless

rely upon a district court case, <u>Champion v. Georgia Bureau of Investigation</u>, 568 F.Supp. 712 (N.D.

Ga.1983), for the proposition the 180-day statute of limitations period in O.C.G.A. § 45-19-36 bars

Plaintiff's § 1983 claims.  <u>Champion</u>, however, is no longer good law.  That finding was reversed by

the same district court in <u>Cook v. Ashmore</u>, 579 F. Supp. 78, 82 (N.D. Ga.,1984).  Defendants' legal

argument is thus without merit.

On this point, however, the Court will note that the relevant statute of limitations for Plaintiff's

§ 1983 claims is two years.   <u>Crowe v. Donald</u>, 528 F.3d 1290, 1292 (11th Cir. 2008).   Because

Plaintiff's Complaint was filed on March 19, 2007, it is possible that at least some of the alleged

harassing conduct by Mathis occurred within this limitations period, i.e., that occurring in February or

early March of 2005.  It is entirely unclear what conduct that is, however.  There are insufficient facts

and argument before the Court for a finding to be made on this issue.  In her brief, Plaintiff summarily

states that "most of the acts of which she complains in the present action occurred within two years of

her filing the Complaint . . . ."  Defendants are as similarly vague, arguing only in their reply brief that

the two years statute of limitations barred Plaintiff's claims because the Complaint in this case was not

filed until March of 2007.   Neither party identifies specific conduct or dates to be considered.  Clearly,

however, the initial burden of informing the district court of the basis for its motion, and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact"

is on the moving party.  <u>Celotex</u>, 477 U.S. at 323.  Defendants, here, failed to meet that burden.

13

Summary judgment as to Plaintiff's § 1983 retaliation claims, as stated in Counts V & VII of the Complaint, must therefore be **DENIED**.[3]

B. Retaliation Claims

Counts III, IV, and VI of Plaintiff's Complaint include allegations of retaliation in violation of Title VII and Section 1983.  On summary judgment, Defendants assert that these claims fail as matter of law as no genuine issue exists as to whether such retaliation occurred.  As to her retaliation claims, Plaintiff contends that once she complained of conduct she believed to be discriminatory, i.e., harassment by Defendant Mathis, she suffered various adverse employment actions, including transfer to a less desirable job location, increased job scrutiny, provision of inadequate job supplies, unwarranted reprimand, and termination.  She does not, however, identify any statements she believes to be direct evidence of retaliation.  Plaintiff thus apparently proceeds upon a theory of discrimination based upon circumstantial evidence.

When relying solely upon circumstantial evidence, regardless of whether a claim is brought under Title VII or Section 1983, a plaintiff must establish her case of discrimination under the burden-shifting paradigm set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir.2005) ("When section 1983 is used as a parallel remedy for violation ... of Title VII, the elements of the two causes of action are the same.").  Under the McDonnell Douglas framework, the plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If plaintiff "fails to satisfy any one of the elements of a prima facie case,"

---

[3] Plaintiff's additionally contend that her first lawsuit against Abilities Discovered somehow tolls the statute of limitations in this case.  That argument need not be addressed by the Court since the issue has been decided in Plaintiff's favor.

14

summary judgment against the plaintiff is appropriate. Turlington v. Atlanta Gas Light Co., 135 F.3d. 1428, 1433 (11th Cir. 1998). If, however, the plaintiff identifies sufficient evidence of a prima facie case, the defendant must then produce a legitimate, non-discriminatory reason to explain the challenged action. Burdine, 450 U.S. at 252-53. This burden is "exceedingly light"; the defendant must merely proffer a non-discriminatory reason, not prove it. Perryman v. Johnson Prods., Co., 698 F.2d 1138, 1142 (11th Cir. 1983). Once a defendant proffers a non-discriminatory reason for an adverse employment action, the burden shifts back to the plaintiff to prove the proffered reason is mere pretext for the true discriminatory motive. To show that a defendant's stated reasons are pretext, the plaintiff must offer evidence "demonstrat[ing] that the proffered reason was not the true reason for the employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). The plaintiff may do this by showing "that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Pursuant to this burden shifting analysis, the Court will first look to whether Plaintiff has identified sufficient evidence of a prima facie case of discrimination. A prima facie case of retaliation contains three elements. The plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir.2008). Here, it is undisputed Plaintiff engaged in statutorily protected conduct. The remaining elements are in dispute.

Defendants first contend that the only adverse employment action taken against Plaintiff in this case was her ultimate discharge. They are correct that an adverse employment action for purposes of a prima facie case of discrimination in employment must be a serious and material change in the terms, conditions, or privileges of employment in a "real and demonstrable way." Davis v. Town of Lake

15

Park, 245 F.3d 1232, 1239 (11th Cir. 2001).  The plaintiff must either provide evidence of an "ultimate employment decision," (i.e. termination, failure to hire, or demotion), or, for conduct falling short of an ultimate employment decision, show that the employer's conduct, in some substantial way, altered his "compensation, terms, conditions, or privileges of employment," deprived him of employment opportunities, or adversely affected his status as an employee.  Crawford, 529 F.3d at 970 (quoting Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir.2000)).  "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  Davis, 245 F.3d at 1239-40.  Not all conduct by an employer that negatively affects an employee constitutes an adverse employment action.  Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998).

Here, as identified above, Plaintiff alleges to have suffered the following employment actions: (1) transfer to a less desirable job location, (2) increased job scrutiny, (3) provision of inadequate supplies, (4) unwarranted reprimand, and (5) discharge.  Obviously, as Defendants concede, Plaintiff's discharge was an adverse employment action as the action represents a serious and material change in the terms of her employment.  The other actions identified by Plaintiff fail to rise to this level.

Certainly, in some cases, transfer within an organization may constitute an adverse employment action.  A lateral transfer with full retention of benefits, however, cannot be described as adverse.  Njie v. Regions Bank, 198 Fed. Appx. 878, 883 (11th Cir. 2006); Akins v. Fulton County, Ga., 420 F.3d 1293, 1302 (11th Cir. 2005); Doe v. Dekalb County School District, 145 F.3d 1441, 1452-53 (11th Cir.1998).  Here, it is undisputed that Plaintiff's transfer was only a change in location.  Plaintiff performed essentially the same duties, maintained the same salary and benefits, and was allowed to work the same number of hours.  It is irrelevant that Plaintiff subjectively viewed the transfer as punishment and considered the location to be "less desirable."  See Njie, 198 Fed. Appx. at 883.  This

16

Court's determination must be objective. <u>Akins</u>, 420 F.3d at1302.  Ultimately, the transfer had no effect upon Plaintiff's compensation, terms, conditions, or privileges of employment, nor did it otherwise deprived her of employment opportunities or adversely affected her status as an employee. As such, it cannot be considered an adverse employment action for the purpose of establishing her retaliation claims.  <u>See</u> <u>Crawford</u>, 529 F.3d 961 at 970.

The remaining employment actions – hightened scrutiny of her work performance, provision of inadequate work supplies, and unwarranted reprimands – likewise do not amount to the type of adverse employment actions that are actionable under Title VII.  As courts within this Circuit have held, "increased supervision cannot reasonably be considered adverse," and thus heightened scrutiny of a plaintiff is not an adverse employment action. <u>Fitzhugh v. Topetzes</u>, 2006 WL 2557921 *7 (N.D. Ga., Sept. 1, 2006); <u>see</u> <u>also</u> <u>Harbuck v. Teets</u>, 152 Fed. Appx. 846 (11th Cir. 2005).  The same can be said for the provision of inadequate work supplies.  Clearly, no reasonable person would conclude that the withholding of work supplies constitutes a significant change in Plaintiff's employment status.  <u>See</u> <u>Arnold v. Tuskegee University</u>, 212 Fed. Appx. 803 (11th Cir. 2006) (holding that denial of request for supplies was not an actionable employment action).  Furthermore, the two written reprimands Plaintiff allegedly received from her supervisors, while likely unpleasant, are of the sort routinely found to fall short of the "serious and material" threshold necessary to be considered adverse employment actions. <u>See</u> <u>Summerlin v. M & H Valve Co.</u>, 167 Fed. Appx. 93, 97 (11th Cir. 2006) ("The reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result."); <u>Wallace v. Georgia Dept. of Transp.</u>, 212 Fed. Appx. 799, 801 (11th Cir. 2006) (written letter of reprimand which did not lead to any tangible harm in the form of lost pay or benefits was not an adverse employment action).  In this case, Plaintiff merely alleges that she was "written-up" twice after her transfer.  There is no evidence identified in the Record suggesting that these reprimands

caused Plaintiff to suffer any tangible harm.  Accordingly, the only event alleged by Plaintiff that amounted to the sort of adverse employment action which is actionable under Title VII or Section 1983 is the termination of her employment.

Having established that Plaintiff suffered only the one adverse employment action, it must next be determined whether there is evidence that her termination was causally related to protected activity. Williams, 303 F.3d at 1291.  To establish the necessary causal relationship, a plaintiff is required to "show [1] that the decision-makers were aware of the protected conduct, and [2] that the protected activity and the adverse action were not wholly unrelated." Curtis v. Broward County, 292 Fed. Appx. 882, 885 (11th Cir. 2008) (quoting McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir.2008))

On this point, the evidence shows only that Plaintiff was terminated within days or weeks of having filed her first charge of discrimination with the EEOC.  There is no evidence identified, however, as to whether anyone at the PCSD was aware of this filing before the decision to terminate Plaintiff was made.  Under Title VII, the "notice of the charge shall be served upon the person against whom such charge is made within ten days" of filing with the EEOC. 42 U.S.C. §§ 2000e-5(b) and (e)(1).  In this case, Plaintiff's initial filing was not directed against the PCSD.  It is undisputed that Plaintiff improperly named Abilities Discovered in that EEOC filing. Thus, Plaintiff cannot rely upon the factual assumption that Defendants were in fact notified of her protected activity by the EEOC. Some evidence as to this fact must be identified for the Court.  See Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir.1997) ("In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action."); see also Goldsmith v. City of Atmore, 996 F.2d 1155 (11th Cir. 1993) (same).  Again, here, there has been no evidence identified as to when the PCSD became aware of Plaintiff's protected activity.  Instead,

Plaintiff relies solely upon the temporal proximity between her filing an EEOC complaint and her notice of termination. Temporal proximity alone is not sufficient to establish a causal connection; obviously, the employer must be aware of the protected conduct as well.[4] Curtis, 292 Fed. Appx. at 885; see Liner v. Dontron, Inc., 9 Fed. Appx. 523, 529 (7th Cir. 2001) (plaintiff failed to establish a prima facie case of retaliation where employer did not receive notice of employee's EEOC charge until one day after supervisor was authorized to terminate employee).

Unfortunately, Defendants do not address this issue. Thus, there is insufficient evidence to find whether there is a genuine dispute as to this point. Defendants may concede that they were aware of Plaintiff's filing an EEOC Complaint prior to her termination. However, even if Defendants concede that they did have notice of Plaintiff's EEOC filings prior to the decision to discharge her, it is apparent that Defendants have otherwise come forward with evidence demonstrating a legitimate non-discriminatory reason for this employment decision. As to this prong of the analysis, Defendants produce evidence that the decision to terminate Plaintiff's employment was based upon her failure to perform specific job duties and her insubordination. For example, Defendants identify testimony that Plaintiff was unwilling to clean a toilet as ordered and threw her time card at her supervisor. This is

---

[4] The Court does recognize that Title VII's participation clause may cover an employee's participation in internal investigations, even in the absence of an EEOC notice of charge of discrimination. See EEOC v. Total Sys. Serv., Inc., 240 F.3d 899 (11th Cir.2001); Clover v. Total Sys. Serv, Inc., 176 F.3d 1346, 1353 (11th Cir. 1999). The requisite temporal proximity, on which Plaintiff solely relies in this case, however, does not exist as to Plaintiff's internal complaint, and Plaintiff does not contend that it does. As the United States Supreme Court has noted, the temporal proximity must be "very close" in those cases in which a plaintiff attempts to establish causation solely through the temporal proximity. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The Eleventh Circuit Court of Appeals has accordingly stated that "three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." Curtis, 292 Fed. Appx. at 885 (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir.2007); Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir.2006) (holding that three months between a protected activity and an adverse employment action standing alone was insufficient to establish a causal connection of retaliatory discharge); Webb-Edwards v. Orange County Sheriff's Office, 525 F.3d 1013, 1029 (11th Cir.2008) (holding that an almost six-month gap between a complaint and a failure to transfer was insufficient to establish a causal connection)). In this case, it is undisputed that Plaintiff filed an internal complaint of hostile work environment and sexual harassment in August of 2005. Plaintiff was not terminated until January of 2006. Defendants' awareness of Plaintiff's internal complaints, approximately five months earlier, is thus not sufficient to establish a prima facie case of retaliation. Id.

sufficient to satisfy Defendants' burden of identifying an legitimate nondiscriminatory reason for the discharge, as this burden is "exceedingly light."  See Perryman, 698 F.2d at 1142.

Once Defendants offer a non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to prove the proffered reason is mere pretext for the true discriminatory motive. To show that a defendant's stated reasons are pretext, the plaintiff must offer evidence "demonstrat[ing] that the proffered reason was not the true reason for the employment decision." Combs, 106 F.3d at 1528.  The plaintiff may do this "by showing both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr., 509 U.S. at 515.  Plaintiff has failed to meet this burden.  In fact, in her Brief in Response to Defendants' Motion for Summary Judgment, Plaintiff makes no effort to argue that the legitimate non-discriminatory reasons for Plaintiff's discharge were pretextual. Rather, Plaintiff relies solely on the temporal proximity of the EEOC charge and the decision to terminate Plaintiff.  However, this fact alone, even assuming that notice is conceded, is not sufficient to establish pretext.  See Jackson v. Hennessy Auto, 190 Fed. Appx. 765, 768 (11th Cir. 2006) ("temporal proximity alone does not establish pretext").

That is not to say that this Court finds that there is *no* evidence supporting an argument of pretext in the Record.  There very well may be such evidence.  It is, however,  not this Court's burden to locate and identify it as such.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").  Because Plaintiff failed to identify and argue the existence of evidence establishing pretext, the Court must find that there is no genuine issue of material fact for a jury to decide on the issue of retaliation.  Summary judgment as to these claims must therefore be **GRANTED** in favor of Defendants.  See Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine

issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.").

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is hereby **GRANTED in part**. Summary Judgment is **GRANTED** as to Plaintiff's Title VII claims based upon allegations of sexual harassment by Defendant Mathis in February and March of 2005, contained in Counts I and II of the Complaint, and as to Plaintiff's Title VII and § 1983 retaliation claims, as included in Counts III, IV, and VI of the Complaint. The Court finds, however, that there is insufficient evidence and argument before the Court to determine whether Plaintiff's § 1983 sexual harassment claims, as plead in Counts V and VII of the Complaint, are foreclosed as being filed outside the relevant statute of limitations. Defendants have thus failed to meet their burden on summary judgment on this issue, and the present motion must be **DENIED** as to Plaintiff's § 1983 sexual harassment claims.

SO ORDERED this 27th day of January, 2009.


S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

JLR/ssh

21